Filed 4/12/16  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BLOIS CONSTRUCTION, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FCI/FLUOR/PARSONS, <br><br> Defendant and Respondent. | B262310 <br><br> (Los Angeles County <br> Super. Ct. No. BC488623) <br><br> ORDER MODIFYING OPINION <br> (NO CHANGE IN THE JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on March 23, 2016, be modified in the following manner:

In the third paragraph on page two, the following sentence is deleted: "FFP is a joint venture of Flatiron Construction, Fluor Corporation, and Parsons Corporation." That sentence is replaced with the following sentence: "FFP is a joint venture of Flatiron West, Inc.; Fluor Enterprises, Inc.; and Parsons Transportation Group, Inc."

This modification does not constitute a change in the judgment.

<u>CERTIFIED FOR PUBLICATION</u>.



ROTHSCHILD, P. J.            JOHNSON , J.            LUI, J.

Filed 3/23/16 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BLOIS CONSTRUCTION, INC., | B262310 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC488623) |
| v. | |
| FCI/FLUOR/PARSONS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mitchell L. Beckloff, Judge. Affirmed.

Lax & Stevens and Paul A. Lax for Plaintiff and Appellant.

Musick, Peeler & Garrett, Jack W. Fleming and Peter J. Diedrich for Defendant and Respondent.

_____

This case involves the interpretation of prompt payment statutes intended to guarantee timely payments to contractors and subcontractors in construction projects. As is typical in the construction industry, here the contract between the owner of the project and the contractor allowed the owner to withhold as "retentions" a percentage of the payments due pending successful completion of the project. Similarly, the contract between the contractor and the subcontractor allowed the contractor to withhold retentions from the payments due the subcontractor.

Pursuant to Public Contract Code section 7107 (section 7107), when a project owner pays a direct contractor the amount it had previously withheld as retentions, the direct contractor must pay its subcontractors their share of the retention within seven days or face penalties. In this case, when the project was half complete, the project owner began making full progress payments to its direct contractor without withholding any retentions. The owner, however, continued to withhold the past retentions from the contractor, and the contractor continued to withhold the past retentions from the subcontractor. The question here is a narrow one: Was the decision by the owner to stop withholding future retentions and pay full progress payments to the contractor equivalent to a payment by the owner of past retentions under section 7107? We answer that question, no, and therefore conclude that the subcontractor is not entitled to late payment penalties under section 7107.

### FACTS AND PROCEEDINGS BELOW

In 2006, the Exposition Metro Line Construction Authority (Expo)[1] contracted with defendant FCI/Fluor/Parsons (FFP) to serve as the general contractor for the Exposition light rail line, connecting downtown Los Angeles with Culver City and ultimately with Santa Monica. FFP is a joint venture of Flatiron Construction, Fluor Corporation, and Parsons Corporation. Plaintiff Blois Construction, Inc. (Blois) agreed to serve as a subcontractor on the project, responsible for underground work. Both the

---

[1] Because the Legislature granted Expo authority over the project during construction, we treat Expo as the owner of the project for purposes of the prompt payment statutes. (Pub. Util. Code, § 132610, subd. (a).)

2

primary contract and subcontract contained a provision allowing for portions of the progress payments due under the contract to be retained pending successful completion of the work. Expo was permitted to withhold 10 percent of the payments owed to FFP, and FFP was entitled to withhold 10 percent of the payments owed to Blois.

The retention provision in the general contract provided that, "after fifty percent (50%) of the Work has been completed, [Expo] may elect to not make further retentions from the remaining Progress Payments if it determines, in its sole discretion, that progress on the Work is satisfactory." Accordingly, in December 2009, FFP requested that Expo cease withholding retentions. Expo acceded to FFP's request, and although Expo reserved the right to resume withholding at a later date, it never withheld retention funds from a payment to FFP after December 7, 2009. It did not, however, release the previously withheld retention funds until May 30, 2014 or later.

By the time Blois finished its work on the project in 2011, FFP had withheld over $500,000 in retentions from Blois. In 2012, Blois filed suit against FFP and its sureties, alleging that FFP had failed to pay Blois for (1) the extra work that Blois performed on the project, and (2) the retentions it had withheld. Pursuant to FFP's motion, the court referred the case to a dispute review board (Board) for arbitration. In the fall of 2013, while the case was still pending before the Board, FFP paid Blois $534,909.89, the full amount that Blois claimed it was owed in retentions. The Board ruled in favor of Blois, finding among other things that under the terms of the subcontract, FFP had been required to pay the retentions it had withheld by September 2011. But the Board left for the trial court to decide whether Blois was entitled to penalties from FFP for late payment of retained amounts.

After a court trial, the court ruled Blois was not entitled to penalties because Expo had not released the retained funds to FPP until 2014 and FFP had paid Blois the full amount of its retention by the end of 2013.

3

## DISCUSSION

California has a series of laws known as "prompt payment" statutes which govern the timing of payments from project owners to general contractors and from general contractors to subcontractors.[2] The purpose of these statutes is to ensure that contractors and subcontractors, who may have less leverage than project owners and contractors, respectively, are paid for their work on a timely basis. (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 720.)

The primary prompt payment statute at issue here is section 7107. This section requires public entities to release retention proceeds to contractors within 60 days of the completion of a project. (§ 7107, subd. (c).) Furthermore, "within seven days from the time that all or any portion of the retention proceeds are received by the original contractor, the original contractor shall pay each of its subcontractors from whom retention has been withheld, each subcontractor's share of the retention received." (*Id.*, subd. (d).) An original contractor who fails to pay a subcontractor "within the time periods required by this section . . . shall be subject to a charge of 2 percent per month on the improperly withheld amount." (*Id.*, subd. (f).)

The only dispute in this case is whether Expo's practice, beginning in February 2010, of paying FFP the full amount of progress payments and not withholding any retentions triggered an obligation by FFP under section 7107 to pay Blois retentions that it had previously withheld. Blois contends that the answer is yes. It argues that, after December 2009, when Expo made its regular progress payments to FFP without withholding any amount in retention, "retention proceeds [were] received by the original contractor" (§ 7107, subd. (d)), and FFP was thus required to pay Blois its share of the retention proceeds within seven days or face penalties.[3] Because this case is a matter of

---

[2]  In addition to the public sector statutes addressed in this case, closely analogous prompt payment statutes, such as Civil Code section 8800 et seq., regulate the payment of contractors and subcontractors in the private sector.

[3]  Blois argues in the alternative that it is entitled to penalties because the Board found that the subcontract between FFP and Blois required FFP to pay the retention

statutory interpretation, our review is de novo. (*S&S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 777.)

Blois's argument depends on interpreting the phrase "retention proceeds" to include any amount that Expo was *entitled* to withhold from FFP, regardless of whether Expo actually withheld that amount. This is contrary to the plain text of section 7107, which provides that "[t]he retention proceeds *withheld from any payment* by the public entity from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section." (§ 7107, subd. (b), italics added). If funds are not "withheld from [a] payment," then section 7107 does not apply. (See also *Yassin v. Solis* (2010) 184 Cal.App.4th 524, 536-537 [holding that a final payment on a project was not a retention payment because it did not represent a payment of funds previously withheld]; *McAndrew v. Hazegh* (2005) 128 Cal.App.4th 1563, 1566 ["Before the 2 percent penalty or attorney fees may be recovered under [the relevant prompt payment statute], the contractor must establish that the owner being sued has actually withheld retention proceeds/payments from the contractor."].)[4]

Blois's argument fails because when Expo ceased withholding retention funds in 2010, it was not paying funds previously withheld. Rather, in its progress payments, it paid FFP the total amount then due without withholding a retention. Because no funds were withheld or paid as retentions, section 7107 did not apply to these payments.

---

payments to Blois by 2011. But Blois has identified no provision in the subcontract that would entitle it to penalties for late payment, and statutory penalties are available only "[i]n the event that retention payments are not made within the time periods required *by this section*." (§ 7107, subd. (f), italics added.) Thus, the due date for repayment under the contract is irrelevant.

[4]     Both *Yassin v. Solis*, *supra*, 184 Cal.App.4th 524, and *McAndrew v. Hazegh*, *supra*, 128 Cal.App.4th 1563, involved the interpretation of Civil Code section 3260 et seq. Those code sections, which established prompt payment requirements for private sector construction contracts, were repealed and replaced without relevant substantive change by Civil Code section 8800 et seq. Because the language and purpose of all these prompt payment statutes are similar, cases applying the private sector prompt payment statutes provide useful guidance to us in interpreting section 7107 and other Public Contract Code sections at issue in this case.

Blois contends that our conclusion is inconsistent with the remedial purpose of the prompt payment statutes, "to encourage general contractors to pay timely their subcontractors." (*Morton Engineering & Construction, Inc. v. Patscheck*, *supra*, 87 Cal.App.4th at p. 720.) According to Blois, by restricting the definition of "retention proceeds," we will allow contractors in FFP's position to continue withholding retentions from their payments to subcontractors even after the project owner ceases withholding retention proceeds from the contractor. This result would be contrary to the spirit and arguably the letter of Public Contract Code section 7200, which provides that "[i]n a contract between the original contractor and a subcontractor, . . . the percentage of the retention proceeds withheld may not exceed the percentage specified in the contract between the public entity and the original contractor." (Pub. Contract Code, § 7200, subd. (b).)

This argument overlooks the requirements of another prompt payment statute, Business and Professions Code section 7108.5. This statute requires a contractor to pay its subcontractors "not later than seven days after receipt of each progress payment, unless otherwise agreed to in writing, the respective amounts allowed the contractor on account of the work performed by the subcontractors." (Bus. & Prof. Code, § 7108.5, subd. (a).) The payments from Expo to FFP were undoubtedly progress payments. (See *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1299 ["a progress payment is a payment other than a down payment that is to be made before the project is completed"]; Pub. Contract Code, § 20104.50, subd. (e)(2) ["A 'progress payment' includes all payments due contractors, except that portion of the final payment designated by the contract as retention earnings."].)[5] Thus, when Expo ceased withholding

---

[5]     *Murray's Iron Works, Inc. v. Boyce*, *supra*, 158 Cal.App.4th 1279, addressed Civil Code section 3260.1, the predecessor to Civil Code section 8800. This statute addresses progress payments in private sector contracts. Public Contract Code section 20104.50 deals with progress payments in contracts involving local government entities. Because these statutes parallel Business and Professions Code section 7108.5, the definition of "progress payment" that applies in these statutes is also useful in interpreting Business and Professions Code section 7108.5.

6

retentions from and made full progress payments to FFP, FFP was obligated to pay—and, so far as we are aware, did pay—its subcontractors the full amount to which they were entitled from each progress payment, without retaining any funds. Section 7107 and Business and Professions Code section 7108.5 operated in tandem to ensure that there was no point at which FFP could receive payments from Expo without paying Blois and other subcontractors their share of the proceeds.

In a complicated public works project, a contractor may wait years before being paid retentions from the owner. The prompt payment statutes guarantee only that subcontractors do not wait significantly longer for payment than direct contractors do. By adopting a limited definition of "retention proceeds" in accordance with statutory language and case law, we support that guarantee. Under the prompt payment statutes, contractors are required to pay subcontractors the retentions owed them upon their receipt from the owner but not earlier.

Because FFP did not receive any retention proceeds from Expo until at least May 30, 2014, its obligation to pay Blois pursuant to section 7107, subdivision (d), did not arise until at least that date. FFP satisfied that obligation by paying Blois the full amount it was due by November 2013. Thus, Blois is not entitled to late payment penalties under section 7107, subdivision (f).

**DISPOSITION**

The judgment of the trial court is affirmed.  Respondent to recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


JOHNSON, J.


LUI, J.