Filed 5/14/18

# IN THE SUPREME COURT OF CALIFORNIA

UNITED RIGGERS & ERECTORS, INC., )
)
       Plaintiff and Appellant, )
)       S231549
       v. )
)       Ct.App. 2/1 B258860
COAST IRON & STEEL CO., )
)       Los Angeles County
       Defendant and Respondent. )   Super. Ct. No. VC062679
_____)

     This case is about construction — both physical and statutory. Spurred by late payment problems in the construction industry, the Legislature established statutory payment deadlines and imposed penalties on owners who delay paying their direct contractors, and on direct contractors who delay paying their subcontractors. But these strict deadlines include an exception relevant to this case: Direct contractors can withhold monies from subcontractors in circumstances where a dispute has arisen between the parties. (Civ. Code, § 8814, subd. (c).) What we must decide is whether this exception allows withholding when there is *any* dispute between the parties, or only when there is a dispute directly relevant to the specific payment that would otherwise be due.

     The Court of Appeal adopted the narrower construction. We agree. The dispute exception excuses payment only when a good faith dispute exists over a statutory or contractual precondition to that payment, such as the adequacy of the construction work for which the payment is consideration. Controversies

concerning unrelated work or additional payments above the amount both sides agree is owed will not excuse delay; a direct contractor cannot withhold payment where the underlying obligation to pay those specific monies is undisputed. We affirm.

## I.

In 2010, Universal City Studios LLLP (Universal) entered agreements to build a new ride at its theme park, Universal Studios Hollywood. For the new attraction that would become *Transformers: The Ride*, Universal selected defendant Coast Iron & Steel Co. (Coast Iron) as the direct contractor to design, furnish, and install metal work. Universal agreed to pay Coast Iron on a monthly basis for amounts billed, minus a 10 percent withholding — referred to in the construction industry as a retention or retainage — as protection against nonperformance and potential liens. Upon receipt, Coast Iron was contractually responsible for making corresponding payments to its subcontractors.

One such subcontractor was plaintiff United Riggers & Erectors, Inc. (United Riggers), which was responsible for installing the metal work Coast Iron fabricated and supplied. The contract between Coast Iron and United Riggers called for United Riggers to receive $722,742 for its work. Because of change orders submitted by United Riggers and approved by Universal, the amount Coast Iron owed United Riggers eventually rose to just under $1.5 million.

United Riggers completed its work to Coast Iron's satisfaction. In March 2012, once all work on the project was finished, Coast Iron asked for a final bill from its subcontractor. United Riggers demanded additional amounts that would have brought its pay to $1.85 million: $274,158.40 for increased expenses attributed to Coast Iron's mismanagement, and $78,384 based on outstanding change order requests. Coast Iron refused payment, responding instead that it would "see [United Riggers] in court!!"

In August 2012, Universal paid out the 10 percent withheld as a retention to Coast Iron, which in turn owed $149,602.52 of that amount to United Riggers. Although United Riggers requested payment, Coast Iron declined to pay forward any part of the retention.

United Riggers sued in January 2013. Its complaint alleged various common law claims and one statutory claim, for failure to make prompt payment of the retention monies Coast Iron had received from Universal and in turn owed United Riggers. (Civ. Code, §§ 8814, 8818.) In February 2013, Coast Iron made a partial payment of the retention, and in December 2013, it paid the remainder. These payments did not moot United Riggers's statutory claim because the statutory scheme imposes a penalty for delay and awards attorney fees and costs to the prevailing party in any action over late payment of a retention. (*Id.*, § 8818, subds. (a), (b).)

After a bench trial, the trial court issued a statement of decision denying relief on all claims and entered judgment for Coast Iron. The Court of Appeal affirmed as to the common law claims but reversed on the statutory claim for failure to make timely retention payments. The appellate court explained that in its view, limiting withholding to disputes specifically related to the withheld monies was more consonant with what the Legislature had contemplated in enacting the prompt payment statute. Accordingly, Coast Iron could not use the parties' dispute over project mismanagement to justify withholding United Riggers's portion of the retention.

The Court of Appeal's decision contributed to a split of authority over whether the Legislature's prompt payment statutes should be interpreted to permit withholding where there is any dispute between a contractor and subcontractor, or only when there is a dispute regarding entitlement to the retention monies themselves. (Compare *Martin Brothers Construction, Inc. v. Thompson Pacific*

3

*Construction, Inc.* (2009) 179 Cal.App.4th 1401 (*Martin Brothers Construction*) [any bona fide dispute can justify withholding retention payment] with *East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742 [only disputes related to the retention's security functions can justify withholding payment].)

## II.

Construction contracts often call for payment in installments — known commonly as progress payments — due when a project reaches various stages of completion. (9 Miller & Starr, Cal. Real Estate (4th ed. 2016) § 31:91, p. 31–370.) By arranging for progress payments, participants in a construction-related transaction build in an incentive for contractors to complete work and provide an owner some protection against the risk of nonperformance (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 55), while permitting contractors to obtain an essential cash flow. As an additional hedge against nonperformance and incentive for completion, an owner may withhold a small percentage of the money due at each stage — typically 5 to 10 percent — until the project is finished. (*Id.* at p. 55; *Yassin v. Solis* (2010) 184 Cal.App.4th 524, 533–534; *McAndrew v. Hazegh* (2005) 128 Cal.App.4th 1563, 1566–1567.) If the contractor defaults, or subcontractors assert mechanics liens[1] for nonpayment, the owner can use this retention fund to make payment or seek substitute performance. (*Pittsburgh Unified School Dist. v. S.J. Amoroso Construction Co., Inc.* (2014) 232 Cal.App.4th 808, 814; *Yassin*, at p. 534.) Once work is done to the owner's

---

[1] "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3; see *Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1166.)

4

satisfaction and the period for filing liens has expired, the owner will release the retention. (*Yassin*, at p. 534; *McAndrew*, at p. 1567.)

Historically, contract and common law governed the precise details of progress payments and retention withholding, such as the timing of payments. Contractors faced challenges negotiating terms that ensured prompt payment and enforcing those terms when payors ignored them in difficult economic times. (Neal & Gibbs, *Past Due* (Jan. 2011) 33 L.A. Law. 24, 24–26.) Yet timely payments are essential to enable direct contractors and subcontractors to maintain an adequate cash flow and make payments to the subcontractors, suppliers, and workers they owe. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2515 (1989–1990 Reg. Sess.) as amended Aug. 14, 1990, p. 2.)

Recognizing the industry-wide problems slow payments could generate, the Legislature entered the scene in 1990. That year, it enacted the first in a series of laws that supply payees a statutory means for enforcing their right to prompt payment. (Stats. 1990, ch. 1536, § 1, pp. 7214–7215.) The statutory scheme the Legislature erected thereafter imposes comprehensive deadlines for both progress and retention payments from owners to direct contractors, and in turn from direct contractors to their subcontractors, for both public and private projects. (Civ. Code, §§ 8800, 8802, 8812, 8814; Pub. Contract Code, §§ 7107, 10262.5; Bus. & Prof. Code, § 7108.5.) The deadlines are enforced by statutory penalties, typically 2 percent of the unpaid amount per month, and by fee-shifting provisions that make the losing party responsible for attorney fees if a lawsuit is required to enforce the right to payment. (Civ. Code, §§ 8800, subd. (c), 8802, subd. (c), 8818; Pub. Contract Code, §§ 7107, subd. (f), 10262.5, subd. (a); Bus. & Prof. Code, § 7108.5, subds. (b), (c).) These statutes are intended to discourage owners and direct contractors from withholding monies owed as a way of granting

5

themselves interest-free loans. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1608 (1991–1992 Reg. Sess.) as amended May 15, 1991, pp. 2–3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1702 (1991–1992 Reg. Sess.) as amended Aug. 20, 1992, pp. 1–2.)

Although the statutes are designed to facilitate prompt payment, the right to payment in full is not unconditional. Where a dispute arises between a payor and payee, the statutes guaranteeing timely payment of progress and retention amounts contain a standard exception permitting the owner or direct contractor to withhold up to 150 percent of the amount in dispute from the contractor or subcontractor, respectively. (Civ. Code, §§ 8800, subd. (b), 8802, subd. (b), 8812, subd. (c), 8814, subd. (c); Pub. Contract Code, §§ 7107, subds. (c), (e), 10262.5, subd. (a); Bus. & Prof. Code, § 7108.5, subd. (a).)

We are concerned here with a direct contractor's delay in making a retention payment to its subcontractor on a private project — a situation governed by Civil Code section 8814 (section 8814). Under subdivision (a), a direct contractor must pay forward to its subcontractor within 10 days retention payments it receives from an owner. But subdivision (c) creates a limited exception to this obligation: "If a good faith dispute exists between the direct contractor and a subcontractor, the direct contractor may withhold from the retention to the subcontractor an amount not in excess of 150 percent of the estimated value of the disputed amount." (§ 8814, subd. (c).) The parties do not dispute that Coast Iron did not pay in a timely manner the retention payment it received from Universal. The parties also agree that the adequacy of United Riggers's performance of the work for which the retention was payment is not in question. Their disagreement instead concerns whether United Riggers was owed additional monies over and above the agreed amounts. The only question is whether the good faith dispute exception excuses the delay in these circumstances.

6

## III.

### A.

Coast Iron contends the language of section 8814 is without limitation, and thus a good faith dispute as to any matter can support withholding: "If a good faith dispute exists between the direct contractor and a subcontractor, the direct contractor may withhold . . . ." (§ 8814, subd. (c).) United Riggers argues a restriction is implicit: Because the subject of section 8814 is the timely making of a retention payment, the good faith dispute must necessarily be a dispute relating to that particular payment.

The correct interpretation of section 8814 is an issue of law, which we review de novo. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.) Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose. (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject. (*926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328; *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155–156; *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.) If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 713; *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 300.)

Section 8814 deals exclusively with the payment of retentions, and the article in which it appears has an equally singular focus on retention payments. (Civ. Code, §§ 8810–8822.) Section 8814, subdivision (a), governs the timing of retention payments. Subdivision (b) governs to whom retention payments must be made. Subdivision (c) identifies the limited circumstances in which a portion of the retention payment may be withheld beyond the deadline established by

7

subdivision (a): in cases of "a good faith dispute," the direct contractor may withhold up to "150 percent of the estimated value of the disputed amount." (§ 8814, subd. (c).) It is certainly possible to read this language as allowing for withholding based on any dispute, without limitation, as Coast Iron does. But the "words [of a statute] must, of course, be read in the context of the provision as a whole" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 546) and in the context of the statutory scheme as a whole (see *People v. Valencia* (2017) 3 Cal.5th 347, 358–360; *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385; *id.* at pp. 1391–1393 (conc. opn. of Cuéllar, J.); *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 268–270). A consideration of the statute's context and its purpose leads us to conclude that it is also quite plausible to read subdivision (c) as referencing only disputes about the retention payment itself — the sole subject of both section 8814 and the article of which it is a part — as United Riggers does.

Section 8814 is one of a series of provisions meant to ensure timely payment to contractors and subcontractors. To the extent possible, statutes relating to the same class of things, and sharing the same purpose or object, should be harmonized and construed similarly. (*Winn v. Pioneer Medical Group, Inc.*, *supra*, 63 Cal.4th at p. 161; *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091.) When the Legislature uses one enactment as the model for another enactment, legislators reasonably may anticipate that courts, and the public, will accord the related measures a common construction. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1129.) This interpretive principle applies to the prompt payment statutes (*Yassin v. Solis*, *supra*, 184 Cal.App.4th at p. 536; *Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 718–720), which were largely modeled on each other and designed to accomplish the same end in a series of closely related contexts (see,

8

e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1608, *supra*, as amended May 15, 1991, p. 3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 329 (1991–1992 Reg. Sess.) as amended Aug. 29, 1991, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1702, *supra*, as amended Aug. 20, 1992, p. 3).

In most instances, the Legislature drafted the dispute exception in these statutes using language that plainly limits withholding to circumstances in which the dispute relates to the specific amount or payment at issue. (See Bus. & Prof. Code, § 7108.5, subd. (a) ["good faith dispute over all or any portion of the amount due"]; Civ. Code, §§ 8800, subd. (b) ["good faith dispute . . . as to a . . . payment due"], 8802, subd. (b) ["good faith dispute over all or part of the amount due"], 8812, subd. (c) ["good faith dispute . . . as to a . . . payment due"]; Pub. Contract Code, § 10262.5, subd. (a) ["good faith dispute over all or any portion of the amount due"].) The absence of similar language makes section 8814 an outlier. (§ 8814, subd. (c); see Pub. Contract Code, § 7107 [also omitting explicit limiting language].)

We might have reason to assign importance to the omission of an explicit limit if the Legislature consistently left out such a limit from statutes governing private projects, as opposed to public projects; or direct contractor-subcontractor payments, as opposed to owner-direct contractor payments; or retention payments, as opposed to progress payments. In closely related statutes, such consistent textual distinctions would suggest the Legislature could be understood to have reasonably contemplated, by the inclusion or omission of such language, a different withholding rule for one category than for the other. Yet no such consistency appears. Business and Professions Code section 7108.5 and Public Contract Code section 10262.5 collectively govern the timing of progress payments from direct contractors to subcontractors on private and public projects,

9

but expressly limit withholding to disputes over the specific payment. (Bus. & Prof. Code, § 7108.5, subd. (a); Pub. Contract Code, § 10262.5, subd. (a).) Meanwhile, Civil Code section 8812 governs the timing of retention payments from owners to direct contractors on private projects and also expressly limits withholding to disputes over the specific payment. (Civ. Code, § 8812, subd. (c).) Reviewing the full matrix of prompt payment statutes, there is nothing unique about retention payments (as opposed to progress payments), or direct contractor-subcontractor payments (as opposed to owner-direct contractor payments), or private projects (as opposed to public works) that has led the Legislature consistently to omit limits on withholding. The absence of any pattern reinforces the conclusion that section 8814 is textually ambiguous, and that we cannot be certain the omission of an explicit limit on the nature of disputes justifying withholding means any dispute, whether or not related to the subject of section 8814 or the article in which it resides, will suffice.

While this preliminary analysis of the text offers no clear answers, reading the statute in light of its broader purpose, as we must (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.4th 257, 269), supports the conclusion that only withholding for disputes over the retention payment itself is allowed. Section 8814 evinces the same underlying aim as the Legislature's other prompt payment statutes: to ensure that parties who supply work or materials on projects, and who otherwise might lack leverage, are timely paid, and to provide them recourse in the event they are not. (See *Blois Construction, Inc. v. FCI/Fluor/Parsons* (2016) 245 Cal.App.4th 1091, 1095; *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 795–796.) This purpose is remedial. (*Blois Construction, Inc.*, at p. 1096; *FEI Enterprises, Inc.*, at p. 796; see Civ. Code, § 8820 [prohibiting as a matter of public policy contractual waiver of the protections of § 8814].) More broadly, the statute is a part of the state's mechanics lien law (Civ. Code, §§ 8000–9566) —

10

remedial legislation meant to protect the right to fair compensation for contractors, laborers, and suppliers.  State policy strongly supports liberally construing this law for the benefit of those it is intended to protect.  (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 889; *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826–827.)

Consider, in light of this purpose, the consequence of interpreting section 8814 as permitting withholding when any amount is in dispute — irrespective of whether the dispute relates to the particular retention payment.  Such a reading would allow for the possibility of double withholding by contractors.  For example, here, roughly $350,000 was at issue apart from the retention.  This was money United Riggers asserted Coast Iron owed for various reasons, but that Coast Iron had not paid — and as a result of the favorable judgment on the merits of the common law claims, will never pay.  Allowing Coast Iron, in addition to the money it has not paid and disputes it owes, to withhold from money it has not paid and does *not* dispute it owes, an amount equal to up to 150 percent of the disputed amount, would create a windfall:  Coast Iron would be able to secure for itself an interest-free loan of the additionally withheld amount.  But this is precisely the evil the Legislature sought to eliminate when it enacted this and other prompt payment statutes.

Conversely, interpreting section 8814 as permitting withholding only for a dispute that relates to the work underlying the particular retention payment, e.g., a dispute over the work's performance or over a third-party lien, avoids double withholding while not impairing the retention's ability to function as security.  This reading allows a party to keep amounts in dispute it might need to hold on to in order to satisfy liens or obtain substitute performance and avoids the prospect of double payment, without granting interest-free loans of amounts that themselves are not controverted.  It also prevents contractors, who may have more leverage

11

than the subcontractors they owe (*Blois Construction, Inc. v. FCI/Fluor/Parsons*, *supra*, 245 Cal.App.4th at p. 1095), from using the withholding of monies over which there is no dispute to exacerbate subcontractors' cash-flow issues and chill the assertion of legitimate claims for additional compensation. United Riggers's proposed interpretation better serves the underlying policies the Legislature sought to advance.

We may also consider legislative history to resolve the ambiguity in section 8814. Section 8814's language originated in former Civil Code section 3260. (Cal. Law Revision Com. com., reprinted at 12C West's Ann. Civ. Code (2012 ed.) foll. § 8814, p. 480.) Prompt payment protections such as former section 3260 were not adopted all at once, but instead were enacted in piecemeal fashion. (See Stats. 1990, ch. 1253, § 2, pp. 5275–5276; Stats. 1990, ch. 1536, § 1, pp. 7214–7215; Stats. 1991, ch. 368, § 1, p. 2032; Stats. 1991, ch. 925, § 1, pp. 4142–4143; Stats. 1992, ch. 1042, § 1, pp. 4878–4879; Stats. 2009, ch. 307, § 73.) Different bills, drafted by different authors, passed at different times, might well use different language to convey the same basic rule, so the absence of an express limit in section 8814 need not imply a departure in meaning from other like statutes. To the contrary: The legislative history associated with these enactments suggests, notwithstanding variations in language, that the prompt payment statutes are best understood uniformly, as requiring that all monies not themselves in dispute be paid over in a timely fashion.

First, analyses generated by legislative committees remarked that later bills were modeled after and intended to mirror the protections of Civil Code former section 3260. (See, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1608, *supra*, as amended May 15, 1991, p. 3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1702, *supra*, as amended Aug. 20, 1992, p. 3.) Second, these laws were designed to require timely payment of all

"amounts due about which there is no good faith dispute." (Assem. Com. on Consumer Protection, Governmental Efficiency and Economic Development, Analysis of Assem. Bill No. 1608 (1991–1992 Reg. Sess.) as amended May 15, 1991, p. 2; see Dept. of General Services, Enrolled Bill Rep. on Assem. Bill No. 1702 (1991–1992 Reg. Sess.) prepared for Governor Wilson (Sept. 4, 1992) p. 2 [prompt payment statute intended to impose statutory penalties when "funds that are not disputed are not released"].)  Third, the Legislature understood the importance of timely payment to contractors' cash flow (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 329, *supra*, as amended Aug. 29, 1991, p. 2) — a cash flow that would be impaired if any dispute between two contractors on one project could forestall payment on another, unrelated project.  All of which makes it plausible to infer the Legislature assumed former section 3260 to similarly require timely payment of all funds that were not themselves the subject of dispute, despite the absence of express language so declaring.

The recent recodification of certain prompt payment protections also supports the conclusion that the dispute-related exceptions operate in a similar fashion, notwithstanding distinctions in their wording.  Contemplating a revision of the state's mechanics lien law, the California Law Review Commission (Commission) and legislative staff expressly recognized the existing framework's inconsistencies and ambiguities:  "The mechanics lien law was first enacted in 1850, and the existing law still contains language dating back to 1872.  Since the last recodification of the statute in 1969, individual provisions have been amended more than 70 times.  Over time the statute has become increasingly difficult to use, generating litigation over confusing provisions, and often leaving participants unsure of their rights and obligations.  [¶]  This recommendation recodifies and clarifies the entire mechanics lien statute.  Terminology has been modernized and

13

made more uniform, and inconsistencies have been eliminated." (Recommendation: Mechanics Lien Law (Feb. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 529; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 189 (2009–2010 Reg. Sess.) as amended Jan. 14, 2010, p. 10.) We infer from this ready acknowledgement of existing inconsistencies that not every variation in the scheme's pre-2010 language reflected a considered difference in underlying purpose.

We find further support for this inference in the historical details of how Civil Code sections 8812 and 8814 were enacted. The content of these provisions traces to former section 3260 of the Civil Code, which governed retention payments by both owners to direct contractors, and direct contractors to subcontractors, for private projects. (Civ. Code, former § 3260, subd. (b), as enacted by Stats. 1990, ch. 1536, § 1, p. 7214.) Former section 3260 used similar language to describe the dispute withholding rights for these two situations, and omitted any express limit on the relation of the dispute to the retention. (See Civ. Code, former § 3260, subd. (c) ["In the event of a dispute between the owner and the original contractor, the owner may withhold from the final payment an amount not to exceed 150 percent of the disputed amount"]; *id.*, subd. (e) ["If a bona fide dispute exists between a subcontractor and the original contractor, the original contractor may withhold from that subcontractor with whom the dispute exists its portion of the retention proceeds . . . . not [to] exceed 150 percent of the estimated value of the disputed amount"].)

The Commission and Legislature sought to recodify these rights unaltered. Section 8814 "restates former Section 3260(d)-(e) without substantive change." (Cal. Law Revision Com. com., reprinted at 12C West's Ann. Civ. Code, *supra*, foll. § 8814, p. 480.) Likewise, section 8812 "restates former Section 3260(c) without substantive change, except that" language relating to completion dates has

14

been omitted and the requirement that the dispute be in good faith made express. (*Id.*, foll. § 8812, p. 478.) The Legislature accepted the Commission's work as a " 'nonsubstantive reorganization of the existing mechanics lien statute that would modernize and clarify existing law' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 189, *supra*, as amended Jan. 14, 2010, p. 8) and enacted the Commission's proposed sections 8812 and 8814 verbatim.

Nonetheless, the Commission — and in turn the Legislature — introduced a discrepancy in the recodified rules by explicitly confining owners to withholding from general contractors based on disputes about the payment itself, while including no such new explicit limit in the rule for direct contractor-subcontractor payments. (Compare Civ. Code, § 8812, subd. (c) ["If there is a good faith dispute between the owner and direct contractor *as to a retention payment due*, the owner may withhold from final payment an amount not in excess of 150 percent of the disputed amount" (italics added)] with § 8814, subd. (c) ["If a good faith dispute exists between the direct contractor and a subcontractor, the direct contractor may withhold from the retention to the subcontractor an amount not in excess of 150 percent of the estimated value of the disputed amount"].) The legislative history indicates both that the express limitation added to Civil Code section 8812 was intended merely to clarify existing law, and that the lack of any corresponding addition to section 8814 is not significant. Even statutes enacted at the same time, and intended to have the same substantive effect, can employ different language.

Also instructive is Civil Code section 8816, the provision immediately following section 8814. Section 8814 recodified Civil Code former section 3260, subdivisions (d) and (e); section 8816 reenacts former section 3260, subdivision (f), without substantive change. (Cal. Law Revision Com. com., reprinted at 12C West's Ann. Civ. Code, *supra*, foll. § 8816, p. 482.) Section 8816 sets out rules

15

for resolving controversies over "work in dispute" (Civ. Code, § 8816, subd. (a)) and requires that "[w]ithin 10 days after acceptance of disputed work, the owner or direct contractor shall pay the portion of the retention relating to the disputed work" (*id.*, subd. (b)).  Reading sections 8812 and 8814 in context with section 8816, the good faith disputes that justify withholding are those that relate to the work for which the retention is payment.

**B.**

Against these arguments from text, context, and history, Coast Iron emphasizes the absence in section 8814 of any express limit on the nature of the dispute justifying withholding, and contends this provision is unambiguous.  For support, Coast Iron relies on *Martin Brothers Construction*, *supra*, 179 Cal.App.4th at pages 1412–1414, which concluded the text of Public Contract Code section 7107 was unambiguous and allowed withholding based on any dispute.  Like Civil Code section 8814's permission to withhold in cases of a "good faith dispute," Public Contract Code section 7107 allows withholding when there is a "bona fide dispute" (Pub. Contract Code, § 7107, subd. (e)) without otherwise tying the dispute to the amount withheld.  Because in its view the statute's plain meaning was clear, the *Martin Brothers Construction* court did not address either the surrounding statutory context or the legislative history.  (*Martin Brothers Construction*, at pp. 1410–1411, fn. 4, 1412–1414.)

The court in *East West Bank v. Rio School Dist.*, *supra*, 235 Cal.App.4th at pages 748–750, expressly rejected *Martin Brothers Construction*, *supra*, 179 Cal.App.4th 1401.  *East West Bank* emphasized the underlying purpose of the prompt payment statute:  to ensure timely payment of the retention as soon as its narrow justifications have been served.  (*East West Bank*, at pp. 748–749.)  As remedial legislation, the statute must "be construed to suppress the mischief at which it is directed."  (*Id.* at p. 748.)  An interpretation that allows ongoing

16

retention when the work for which money is being retained has been completed to everyone's satisfaction and the period for liens has passed would not do so. (*Id.* at pp. 748–749.) *East West Bank*'s observations are sound.

Coast Iron urges us to follow *Martin Brothers Construction*, *supra*, 179 Cal.App.4th 1401 because the Legislature allegedly embraced the case's reasoning when it enacted section 8814 the next year without inserting an express limit on the nature of disputes that could support withholding. No persuasive rationale supports such an inference. Indeed, the language of section 8814 was drafted by the Commission before *Martin Brothers Construction* was decided and was enacted without change by the Legislature. (See Recommendation: Mechanics Lien Law (Feb. 2008) 37 Cal. Law Revision Com. Rep., *supra*, at p. 726; Stats. 2010, ch. 697, § 20.) To the extent it sheds light on the question before us, the legislative history is as bereft of any mention of *Martin Brothers Construction* as it is of indication that legislators ever considered the Commission's proposed language in light of that case.[2]

Finally, Coast Iron underscores that section 8814 allows withholding of up to 150 percent of the disputed amount (§ 8814, subd. (c)). From this provision it reasons that the Legislature was willing to allow withholding of amounts not in dispute. Yet the most reasonable understanding of the 150 percent clause is also the most straightforward — by allowing withholding up to 150 percent, the statute provides a margin for error for managing the run-of-the-mill disputes about

---

[2] This sequence of events does render more understandable the conclusion the appellate court reached in *Martin Brothers Construction*, *supra*, 179 Cal.App.4th 1401. Because that case was decided before formal enactment of a recodified mechanics lien statute, the Court of Appeal did not have the opportunity to consider the later legislative history and the illumination it offers as to the Legislature's purposes and intent. With the benefit of that history, this case is an easier one than the interpretive problem the *Martin Brothers Construction* court confronted.

17

construction that lie at the heartland of the statute's purpose, given the likelihood of uncertainty about the precise cost of incomplete or inadequate work. The resulting leeway insulates payors from statutory penalties and prevailing party fees in the event a judge or jury later takes a marginally different view of the amount genuinely in dispute. (Cf. *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1241–1242 [although a good faith dispute existed, holding that the direct contractor exceeded even the 150 percent allowance by withholding more than $100,000 from subcontractor when $35,000 or less was at issue].) It also provides payors additional security in the event that finding another contractor to remedy deficient or unfinished work proves costlier than anticipated. Nothing about the presence of this additional flexibility suggests the statutory purpose encompasses shielding payors who withhold monies with no good faith basis for contesting either the adequacy of the construction work for which the monies are payment, or the obligation to pay these funds as opposed to other sums that may be the subject of any separate, ongoing controversy.

## C.

We conclude section 8814 does not arise from a legislative purpose to grant broader withholding rights for direct contractors making retention payments to their subcontractors on private projects than in other circumstances. We resolve the ambiguity evident from the text and context in favor of allowing the same withholding rights as under the panoply of prompt payment statutes that expressly limit withholding to a narrow class of disputes over the specific payment in question. This interpretation comports more closely with the prompt payment statutes' underlying remedial purpose: to ensure timely payment of undisputed amounts to contractors, without impairing the ability of payors to withhold amounts as security when the obligation to pay those specific monies is in doubt. (See *East West Bank v. Rio School Dist.*, *supra*, 235 Cal.App.4th at pp. 748–749.)

18

Consistent with this rule, a direct contractor may delay payment when the sufficiency of the subcontractor's construction-related performance is the subject of a good faith dispute, when liens or other demands from third parties expose the direct contractor to potential double payment, or when payment would result in the subcontractor receiving more than the minimum amount both sides agree is due. What a direct contractor may not do is withhold a retention that is simply part of that undisputed minimum amount, because a dispute has arisen over whether additional amounts over and above the retention might also be owed. In effect, the payor must be able to present a good faith argument for why all or a part of the withheld monies themselves are no longer due.

Here, for example, United Riggers contended Coast Iron should pay amounts over and above the $1.5 million it eventually received, but the retention monies Coast Iron held on to were part of the original $1.5 million over which there was no dispute. Coast Iron could not use United Riggers's demand for $1.85 million to justify keeping all monies in excess of $1.35 million. There was never any good faith argument over Coast Iron's underlying obligation to pay over the additional $150,000, which it eventually did, but the intervening delay granted Coast Iron a no-interest loan and punished United Riggers for seeking additional compensation, in contravention of the Legislature's purposes to end such loans and reduce payors' abuse of their superior leverage.

To the extent *Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc.*, *supra*, 179 Cal.App.4th 1401 is inconsistent with the views expressed in this opinion, we disapprove it.

19

## IV.

The statutory right to prompt payment United Riggers asserts is remedial, granted by one of several laws that sought to ensure contractors are not at the mercy of those upon whom they depend for payment. In light of that remedial purpose, we construe the right broadly and exceptions to its application narrowly. Our analysis is informed by the text, structure, and previous interpretations of those laws establishing a similar right, as well as the relevant legislative history. Taking all these factors into account, we conclude that timely payment may be excused only when the payor has a good faith basis for contesting the payee's right to receive the specific monies that are withheld. Coast Iron argues instead that the Legislature chose to permit withholding of monies both sides agree are due when any conceivable dispute exists between the parties, because the statute fails to include explicit limits on the circumstances in which monies can be withheld. This construction of the statute is not built on the most secure foundation, given the frequency with which the Legislature has imposed explicit limits in related contexts, the statute's specific remedial purpose, and evidence that the omission here was not a purposeful departure from the Legislature's general approach. We affirm the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

**CUÉLLAR, J.**

**WE CONCUR:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**BAMATTRE-MANOUKIAN, J.**\*

---

\* Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 243 Cal.App.4th 151
**Rehearing Granted**

_____

**Opinion No.** S231549
**Date Filed:** May 14, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Thomas I. McKnew

_____

**Counsel:**

Law Office of Dirk Bruinsma, Dirk Bruinsma; Law Offices of Kristen Martin and Kristen Martin for Plaintiff and Appellant.

John P. Carpenter for The Associated General Contractors of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Westrup & Associates, R. Duane Westrup and Ian Chuang for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kristen Martin
Law Offices of Kristen Martin
1278 Glenneyre Street, #205
Laguna Beach, CA  92651-3103
(949) 510-5509

John P. Carpenter
Balfour Beatty Construction
2335 Broadway, Suite 300
Oakland, CA  94612
(402) 250-9586

R. Duane Westrup
Westrup & Associates
444 Ocean Boulevard, Suite 1614
Long Beach, CA  90802-4524
(562) 432-2551