Filed 10/6/21  Thompson v. Orange County Transportation Auth. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HARVEY J. THOMPSON III,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ORANGE COUNTY TRANSPORTATION AUTHORITY et al.,<br><br>    Defendants and Respondents. | G059301<br><br>(Super. Ct. No. 30-2019-01108804)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

McGrane, William McGrane and Matthew Sepuya; Jenkins Mulligan & Gabriel and Daniel J. Mulligan for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, M. Lois Bobak and Patrick M. Desmond; Best Best & Krieger and Scott William Ditfurth; Lewis Brisbois Bisgaard & Smith and Stephen Heald Turner for Defendants and Respondents.

## INTRODUCTION

Section 31490 of the Streets & Highways Code was enacted in 2010 to protect the "personally identifiable information" of motorists using toll roads. (*Id.* at subd. (a).)[1] The multi-part statute details some of the ways the Legislature sought to accomplish this goal: for instance, by requiring transportation agencies to develop privacy policies, purge old consumer data, and largely refrain from marketing "products or services" to nonsubscribers. (*Id.* at subd. (k).) But there is only one place in the statute providing a remedy if it is violated: subdivision (q). This subdivision allows "a person whose personally identifiable information has been knowingly sold or otherwise provided in violation of" section 31490 to bring an action to recover, "[i]n addition to any other remedies provided by law," either a $2,500 penalty per violation or actual damages. (*Id.* at subd. (q)(1).)

Today we hold there can be no right of action under section 31490, subdivision (q) for placing a nonsubscriber's name and address on the envelope of a letter already required by law to be mailed (even when the letter itself contains marketing language violating subdivision (k) of the statute). We therefore affirm the trial court's ruling sustaining without leave to amend a demurrer against a purported class action complaint founded on such a theory.

## FACTS

Appellant Harvey J. Thompson III must have been quite surprised one day in late 2018 when he received a notice of toll evasion from the 91 Express Lanes connecting Orange and Riverside Counties in Southern California. The 91 Express Lanes

---

[1] All statutory references are to the Streets & Highways Code unless otherwise indicated.

2

are jointly owned by two tolling authorities, respondents Orange County Transportation Authority (OCTA) and Riverside County Transportation Commission (RCTC). OCTA and RCTC employed a third-party contractor, respondent Cofiroute USA, LLC (CUSA) to operate the toll lanes.

The notice stated Thompson had been on the lanes on November 26, 2018 without a valid FasTrak® account. The problem with this assertion is that Thompson lives in Northern California and had been "nowhere near" the 91 Express Lanes on said date.

He protested the notice, and on January 4, 2019, received a letter entitled "Results of Administrative Investigation" issued under Vehicle Code sections 23302 et seq. and 40250 et seq. As its title would suggest, the letter informed Thompson of the outcome of an administrative investigation completed at his request. OCTA and RCTC were dismissing the notice of toll evasion violation for which he had been cited. Thompson was offered "sincere apologi[es]" for the "inconvenience." The letter closed with an invitation: "If you do not have a FasTrak® account, we would be happy to establish an account for you." Thompson was given the website and phone number to utilize if he wished to establish an account.

Thompson did not wish to establish an account. Quite to the contrary, he served RCTC and OCTA with class action damage claims, alleging the letter illegally solicited his business in violation of section 31490. RCTC and OCTA denied his claims, and he filed a class action lawsuit against both entities as well as CUSA in October 2019 for declaratory relief and "penal fines." [2]

The respondents immediately filed the first of what would be two demurrers, arguing, amongst other things, that the letter did not give rise to a cause of action under section 31490 because there was no improper disclosure of personally

_____

[2] Thompson has since dismissed the declaratory relief cause of action.

3

identifiable information to a third party.[3]  The trial court ultimately sustained their demurrer to the second amended complaint without leave to amend, finding the claim was untimely and failed to state a cause of action.

## DISCUSSION

Thompson appeals the trial court ruling in both respects.  We find he did not state a cause of action under section 31490.

To resolve this appeal, we need only construe section 31490 in connection with another relevant provision, Vehicle Code section 40255.  Our review is de novo, not just because "[w]e exercise our independent judgment to determine whether a cause of action has been stated as a matter of law" on demurrer (see *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667), but also because the issue is one of statutory construction.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.)

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.  (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386.)  We must look to the statute's words and give them 'their usual and ordinary meaning.'  (*DaFonte v. Up–Right, Inc.* (1992) 2 Cal.4th 593, 601.)  'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.'  (*Green v. State of California* (2007) 42 Cal.4th 254, 260; see also *Gattuso v. Harte–Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.)"  (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388 (*Imperial*).)  "Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result.'  (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343.)  This policy derives

---

[3]      The demurrers were also based on procedural flaws in the complaint.  Respondents argued Thompson's claim for declaratory relief was not a present controversy and that his lawsuit was time-barred because it was brought more than six months from the denial of his government claims.  Since we hold the demurrer was properly sustained on the merits, we do not address these issues.  We also deny all requests for judicial notice, since the items for which the parties seek judicial notice are relevant to the timeliness issue only.

largely from the presumption that the Legislature intends reasonable results consistent with the apparent purpose of the legislation. [Citation.] Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. [Citations.]" (*Imperial*, *supra*, 47 Cal.4th at p. 388.) Moreover, where two statutes relate to the same subject matter and share the same purpose or object, they "should be harmonized." (See *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1090.)

In 1995, the Legislature added Article 4 to Division 17, Chapter 1 of the Vehicle Code, beginning with section 40250. Article 4 created a procedure by which toll evasion violations could be handled in a civil and administrative capacity.[4] (See Veh. Code, § 23302.5, subd. (b).) Under Vehicle Code section 40254, if a vehicle evades tolls, the agency authorized to collect them is required to send the registered owner of the offending vehicle a notice of toll evasion. If the owner wishes to contest the violation, the procedure for doing so is set forth in Vehicle Code section 40255. Once a notice of toll evasion is contested, the toll agency must investigate. (*Id.* at subd. (a)(1).) If the agency finds the violation did not occur or the contestant was not responsible for it, it must cancel the violation and make an official record of having done so. (*Ibid.*) And here is the most important part: The agency "*shall mail* the results of the investigation to the person who contested the notice[.]" (*Ibid.*; italics added.)

Fifteen years after the creation of Article 4 of Division 17, Chapter 1 of the Vehicle Code, section 31490 was added to Division 17, Chapter 8 of the Streets & Highways Code dealing with electronic toll collection and electronic transit fare collection systems. It was proposed because there was "a legitimate concern that

---

[4] Prior to the existence of Article 4, toll evasion was a misdemeanor offense. (See Legis. Counsel's Dig., Assem. Bill No. 1223 (1995-1996 Reg. Sess.) Stats. 1995, ch. 739.)

information originally collected for purposes of electronic toll collection or the provision of travel information could be provided to other companies or organizations for marketing purposes." (Sen. Transportation & Housing Com., Analysis of Sen. Bill No. 1268 (2009-2010 Reg. Sess.) Apr. 5, 2010, p. 4. ) Section 31490 made it unlawful for a transportation agency to "sell or otherwise provide to any other person or entity personally identifiable information of" any subscriber, "[e]xcept as otherwise provided" in the statute. (*Id.* at subd. (a).) Furthermore, section 31490, subdivision (k) of the statute made it unlawful for a transportation agency to "use a nonsubscriber's personally identifiable information obtained" through its toll collection systems "to market products or services to that nonsubscriber" except in a notice of toll evasion. (*Id.* at subd. (k).) "In addition to any other remedies provided by law, a person whose personally identifiable information has been knowingly sold or otherwise provided in violation of this section may bring an action" for penalties and attorney fees and costs. (*Id.* at subd. (q).)

Thompson contends he is entitled to statutory penalties, attorney fees, and costs because he was a nonsubscriber and his personally identifiable information – name and address, to be exact – was "otherwise provided" to the United States Postal Service (USPS) to deliver the letter containing an invitation for him to join the FasTrak® program. (See § 31490, subds. (k) & (q).)

The language of section 31490, subdivision (q) is somewhat ambiguous. The relevant dictionary definition for the word "provide" is "to supply for use." (Webster's 3d New Internat. Dict. (1981) p. 1827.) In the most technical sense, then, Thompson's name and address were indeed supplied to USPS for use. But, as the trial court correctly observed, the term "provided" must be construed in the context in which it is used, keeping in mind the Legislature's purpose in enacting the statute. (See *Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260, 1274.) Section 31490, subdivision (q) allows penalties where personally identifiable information is "*knowingly sold or otherwise* provided in violation of" the statute. (*Ibid.*; italics

6

added.)  In enacting section 31490, the Legislature aimed to prevent the disclosure of personal information to third parties for marketing purposes; hence, the prohibition on knowingly selling such information.  Disclosure of Thompson's information to the USPS for purposes of sending him an official letter is not a marketing purpose, and thus does not fall within the class of conduct the statute was designed to prohibit.

We are also mindful of our duty to construe statutes, if possible, to avoid absurd results.  (See *Interinsurance Exchange v. Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 153.)  Vehicle Code section 40255 *required* respondents to mail the letter to Thompson, and the letter contained the results of the administrative investigation they had to perform.[5]  Unless USPS personnel opened the envelope – a proposition for which we have no allegation or evidence – it would have no way of knowing that the letter also contained arguably illegal marketing language under section 31490, subdivision (k) or that Thompson was a nonsubscriber.  Adoption of Thompson's construction of section 31490, subdivision (q) would thus require us to penalize respondents for merely mailing the letter; that is, carrying out a duty they were required by law to perform.  We do not believe the Legislature intended section 31490, subdivision (q) to operate in such a manner.

---

[5]  Despite respondents raising it in their brief, Thompson has not addressed Vehicle Code section 40255, or how it and section 31490 should be reconciled.

7

## DISPOSITION

The dismissal is affirmed.  Respondents to recover their costs on appeal.


                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.