[No. E064121. Fourth Dist., Div. Two. Mar. 17, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
LAMONTE TYREE RUSSELL, Defendant and Appellant.

## Counsel

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randall D. Einhorn, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

**O**PINION

**CODRINGTON, J.—**

I

INTRODUCTION

Defendant Lamonte Tyree Russell and codefendants, Ronald Edward Butterfield and Eric Lamichael Deon Williams, were charged with committing attempted murder (Pen. Code, §§ 664, 187;[1] count 1), aggravated mayhem (§ 205; count 2), torture (§ 206; count 3), and assault with a deadly weapon (§ 245, subd. (a)(1); count 4). The trial court severed defendant's trial from the other two defendants' trial. The jury found defendant guilty of aggravated mayhem, torture, and assault with a deadly weapon, but not guilty of attempted murder. The trial court sentenced defendant to seven years to life in prison.

Defendant appeals his convictions on the grounds there was no unanimous oral declaration of a guilty jury verdict and the trial court erred in denying his motion to exclude statements he made during a police interview before he was advised of his *Miranda*[2] rights. Defendant also contends the trial court violated his constitutional due process rights by failing to disclose Juror No. 11's (TJ11) identifying information, and by not subpoenaing TJ11 to testify regarding juror misconduct disclosed to trial counsel. We reject defendant's objections for the reasons stated below and affirm the judgment.

II

FACTS

On January 12, 2013, Gabriel, a student at the University of California, Riverside, hosted a party at his apartment near the college campus. Twenty or 30 of his friends attended the party. Defendant and two companions, Ronald Butterfield and Eric Williams, who were unknown to Gabriel, entered Gabriel's apartment uninvited. As they entered, Gabriel asked the three men to leave. Rather than leaving, they proceeded further into the apartment and one of the men pushed an invited guest. Another guest, David,[3] punched Williams in the mouth, knocking out a tooth. The invited guests then pushed defendant and his two companions out of the apartment.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*).

[3] Also known as Alex.

Upon being ejected, with the door locked behind them, defendant and his companions rammed the door in an attempt to reenter the apartment. The men broke the door lock and doorframe. The three men eventually left but threatened to return. One of the men said they were "coming back with the blaze," which Gabriel understood to mean they would bring guns. Someone called the police, who checked out the scene and then left. Some of the party guests remained at Gabriel's party for several hours, fearing the three men would attack the guests as they left the apartment.

At around 3:00 a.m., party guests, Adam, David, Nathan, and K.K., left the apartment together. As they walked out of the apartment building, defendant, Butterfield, Williams, and another individual attacked the departing guests. Williams had a knife, Butterfield had a metal bat, and defendant had a hammer. The party guests ran in different directions. Williams chased Adam, threatening, "Call the police and I'll kill you."

Meanwhile, Butterfield and defendant chased David and K.K. Butterfield whacked David with a bat, full force in the back of the head and upper back. David fell, landing on his back, and did not move. Butterfield forcefully hit David with the bat again two more times and stomped on his head. Defendant kicked David a few times while David lay on the ground. David suffered from a fractured skull and blood clots on his brain. He remained in a coma for several days, close to death. David underwent brain surgery, with hospitalization for 21 days. At the time of trial, David lacked fine motor skills in his right hand.

During a videotaped police interview, defendant admitted he went to a party at Gabriel's apartment with Williams and Butterfield, also known as "Biz." Defendant said that after he and his companions were ejected from the party, they happened to be walking around in the area of the apartment complex when the party ended. Defendant took a bat out of the car in case he had to defend himself and his friends. Defendant anticipated they would "get into something" because Williams's teeth had just been knocked out.

Defendant admitted being at the scene of the attack on David but denied participating in the attack and denied chasing anyone. He claimed he just stood nearby with a bat for protection. Defendant denied seeing what the others were doing because he was not next to them. He was looking around to make sure no one, including the police, sneaked up on them.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1050.

## V

## DISCLOSURE OF JUROR IDENTIFYING INFORMATION

Defendant contends the trial court violated his due process rights by refusing to disclose TJ11's identifying information. Defendant argues TJ11 did not protest disclosure and therefore the trial court was required to release her identifying information. We disagree.

### A. *Procedural Background*

Defendant filed a posttrial motion to disclose juror identifying information under Code of Civil Procedure sections 206 and 237 (disclosure motion). Defendant requested the information for the purpose of investigating whether to bring a motion for new trial based upon juror misconduct. Defense counsel's amended supporting declaration stated that after the trial, he spoke to TJ11 in the courthouse hallway. TJ11 stated she had voted not guilty to count 1, and guilty to counts 2, 3, and 4 because the foreperson and other jurors led her to believe the jury must be unanimous only as to count 1. TJ11 further told defense counsel that on the last day of deliberations, Juror No. 6 "brought in a sheet full of information he had prepared during the evening recess, purportedly consisting of matters he had researched on the internet, and which included Biblical quotations he shared with Juror #11 in order to persuade her."

During the initial hearing on defendant's disclosure motion, the prosecutor agreed, and the trial court found, that defendant had met his burden of making a prima facie showing of good cause for disclosure of the jurors' identifying information. The trial court agreed to draft a letter notifying the jurors that counsel was requesting release of their identifying information. The court told counsel they would have an opportunity to comment on the letter's contents and could make suggestions on changes to the letter.

The trial court sent the jurors a letter dated July 8, 2014, which notified the jurors that counsel had requested their personal juror contact information, that a hearing on the request was scheduled for July 25, 2014, and that the jurors were requested to notify the court at the hearing or beforehand by phone or letter as to whether they objected or agreed to the granting of the disclosure request. The letter concluded by stating, "If we do not hear from you within 10 days of receipt of this letter, we will try to contact you by phone before the hearing." The letter did not state that if the court did not receive a response, it would assume the juror did not object to disclosure.

During the hearing on July 25, 2016, the trial court noted that one of the jurors, Juror No. 10, was present at the hearing and all of the other jurors, with the exception of TJ11, had responded. Juror No. 10 told the court he did not have any objection to speaking with counsel regarding the trial. After Juror No. 10 left the courtroom, the court stated that the only other juror who consented to speaking to counsel was Juror No. 2. All the other jurors, except for TJ11, sent the court written responses or telephonically told the court they did not want to be contacted. The court stated the court clerk called TJ11 the day before the hearing and the morning of the hearing and left messages but TJ11 did not respond.

Defense counsel argued TJ11's nonresponsiveness meant she did not object to releasing her identifying information and therefore it should be released. The trial court disagreed but deferred ruling on whether to release TJ11's information until the continued sentencing hearing on September 12, 2016. The court said that, in the meantime, the court clerk would continue to try to contact TJ11 by phone. The court stated that it believed that if a juror had not contacted the court in response to the court's letter, the juror did not want to be contacted, but the court would consider any authority to the contrary.

At the hearing on September 12, 2015, the court advised the parties it still had not heard from TJ11. TJ11 was called at least five times. The prosecutor argued that TJ11's nonresponsiveness should be construed as an objection to releasing the juror's identifying information. The prosecutor stated that counsel spoke to the two jurors, Juror No. 2 and Juror No. 10, who agreed to be contacted, and those jurors did not corroborate TJ11's statements made to defense counsel.

After hearing oral argument, the trial court noted that all the jurors, except TJ11, had responded by letter or phone. Some of the jurors had received followup calls. The court noted: "I think that the fact that [TJ11] has certainly received notice from the Court, the letter was not returned—and while no phone messages have been returned, it's clear that her phone is still operational. No one has called back and said it's a wrong number. So clearly she's gotten our requests either by letter or by phone or both. [¶] And the fact that she is refusing to respond leads me to no other conclusion than that she is desirous of not speaking with us, which certainly is her right under the law."

The court added that the two jurors who were contacted did not corroborate any of the comments that TJ11 made in the hallway. There was no corroboration that Juror No. 6 or any other juror said during deliberations that the verdicts did not have to be unanimous. There also was no evidence of any outside influence, such as Juror No. 6 bringing to deliberations Biblical references. The two jurors who spoke to counsel denied that any of those

discussions occurred during the juror deliberations. The trial court therefore found there was no credible evidence that any misconduct occurred during the deliberations. The court further found there was not a sufficient basis to subpoena TJ11. In response to the trial court's findings, defense counsel stated he would not bring a motion for new trial.

B. *Applicable Law*

■ After a jury convicts a defendant, defense counsel may attempt to contact jurors to discuss the case with them in an effort to determine whether there was juror misconduct. Jurors often wish to keep their contact information confidential. " 'Discovery of juror names, addresses and telephone numbers is a sensitive issue which involves significant, competing public-policy interests.' " (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 380 [100 Cal.Rptr.3d 820] (*Tuggles*), quoting *People v. Rhodes* (1989) 212 Cal.App.3d 541, 548 [261 Cal.Rptr. 1].) "Trial courts have broad discretion to manage these competing interests by allowing, limiting, or denying access to jurors' contact information. [Citations.] The Legislature has supplemented the protection of jurors' personal information by enacting Code of Civil Procedure section 206." (*Tuggles*, at p. 380.)

Under Code of Civil Procedure section 206, jurors have the prerogative of agreeing or declining to discuss the case after trial with the parties. "Nothing in section 206 compels a reluctant juror to speak with any of the parties, their counsel, or investigators. 'If any juror refuses to consent, that is the end of the matter.' " (*Tuggles, supra*, 179 Cal.App.4th at p. 381, quoting *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1097 [86 Cal.Rptr.2d 602, 979 P.2d 963].) If counsel wish to speak to jurors and are unable to locate them, counsel may file a petition under Code of Civil Procedure section 237, seeking access to jurors' contact information. Under Code of Civil Procedure section 237, even if there is good cause for disclosure, the petitioner is not automatically entitled to jurors' contact information. (*Tuggles*, at p. 381.) Sections 237 and 206 were enacted "to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors' privacy, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system." (Stats. 1995, ch. 964, § 1, p. 7375; see also *Townsel*, at p. 1091.)

■ If the trial court sets a hearing on a petition for disclosure of jurors' contact information under Code of Civil Procedure section 237, jurors are entitled to 20 days to object before the hearing. (Code Civ. Proc., § 237, subd. (c).) Jurors may object by telephone or in writing, rather than appearing at the hearing. (*Tuggles, supra*, 179 Cal.App.4th at p. 382.) "Regardless of

how a juror might object to the release of his or her information, an objection precludes disclosure to the person requesting the information. [Citations.] As the California Supreme Court has explained, 'A criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict.' [Citations.]" (*Ibid.*) "Nothing in Code of Civil Procedure section 206 or 237 dilutes the trial court's inherent power to shield jurors from unwanted contact by parties or their counsel." (*Id.* at p. 382; see *Townsel, supra,* 20 Cal.4th at p. 1096.)

## C. *Discussion*

In the instant case, the trial court heard and denied defendant's request for disclosure of TJ11's personal contact information. Defendant contends the trial court erred in denying the request because TJ11 did not "protest" disclosure. Defendant argues TJ11's nonresponsiveness was not a protest within the meaning of Code of Civil Procedure section 237. The People argue to the contrary that TJ11's nonresponsiveness qualified as a protest.

■ Code of Civil Procedure section 237 does not define the term "protest." Section 237, subdivision (c) states various ways in which a juror may protest a request for disclosure, including appearing in person, in writing, by telephone, or by counsel. But section 237, subdivision (c) does not limit a juror's protest to these specified methods. Rather, the statutory language suggests the Legislature intended to accommodate jurors in conveying their objections to disclosure of their personal contact information.

Subdivision (c) of Code of Civil Procedure section 237 therefore did not preclude the trial court from finding in the instant case, based on the totality of the circumstances, that TJ11's nonresponsiveness constituted a "protest" or objection to disclosure under section 237. The disclosure request notice letter the trial court sent the jurors did not inform TJ11 that if she did not respond to the letter, the court would conclude TJ11 agreed to disclosure and would release her personal contact information to defendant. In addition, after TJ11 failed to respond to the court's letter, the court made at least five followup calls over a period of a month and a half, leaving messages requesting TJ11 to notify the court regarding whether she wanted her identifying information released to counsel. TJ11 did not return any of the calls and did not appear in court or contact the court regarding the matter. The trial court continued the hearing on defendant's disclosure request to allow the court clerk to continue attempting to contact TJ11, the only juror who had not responded. The court also verified that the court's notice letter was sent to TJ11's correct address and that calls were made to TJ11's current phone number.

■ Under these circumstances, the trial court reasonably found that TJ11's nonresponsiveness reflected that TJ11 objected to disclosure of her

personal contact information and was unwilling to be contacted by defendant. Defendant argues that TJ11's silence is insufficient to constitute a "protest" under Code of Civil Procedure section 237, subdivision (d). Defendant's reliance on section 237, subdivision (d) for this proposition is misplaced. Section 237, subdivision (d) states in part that "[a]fter the hearing, the records shall be made available as requested in the petition, unless a former juror's protest to the granting of the petition is sustained." This language merely requires the trial court to release a juror's personal contact information, unless the trial court sustains a juror's "protest." Section 237, subdivision (d) is not dispositive of the key issue here of whether TJ11's nonresponsiveness can be construed as a protest or objection to disclosure under section 237.

Subdivision (d) of Code of Civil Procedure section 237 further states that "[t]he court shall sustain the protest of the former juror if, in the discretion of the court, the petitioner fails to show good cause, the record establishes the presence of a compelling interest against disclosure as defined in subdivision (b), or the juror is unwilling to be contacted by the petitioner." Here, the trial court reasonably found under the totality of the circumstances that TJ11's nonresponsiveness constituted a passive objection or "protest" to disclosure of her personal contact information and an unwillingness to be contacted by defendant.

■ We reject defendant's contention that in every instance a juror's nonresponsiveness is not a "protest" under Code of Civil Procedure section 237, and therefore the court must release the juror's personal contact information to the defendant. We also reject the People's contrary proposition that a juror's nonresponsiveness must always be construed as a protest. Whether a juror's nonresponsiveness supports a finding that the juror protests or objects to disclosure of personal contact information under section 237 is a factual determination. In making such a determination, the trial court must consider the totality of the circumstances and this court must give deference to the trial court's findings if supported by the evidence. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 931 [5 Cal.Rptr.3d 640].) Here, there was sufficient evidence to support the trial court's reasonable finding that TJ11's nonresponsiveness demonstrated she objected to disclosure of her personal contact information and did not want to have any contact with defendant. The trial court therefore did not abuse its discretion in denying defendant's request for the release of TJ11's personal contact information.

## VI

## COMPELLING TJ11 TO PROVIDE ADDITIONAL INFORMATION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII

## DISPOSITION

The judgment is affirmed.

Miller, Acting P. J., and Slough, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2017, S241261.

---

*See footnote, *ante*, page 1050.