Filed 12/13/24  P. v. Johnson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B325013 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. VA146860 |
| JEFFREY ARDONAL JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Conditionally reversed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jeffrey Ardonal Johnson of first degree murder. After the trial, Johnson asked the court to unseal juror information to facilitate his investigation of possible juror misconduct. Johnson's counsel submitted a declaration recounting her conversation with the jury foreperson. According to counsel, the foreperson told the other jurors during deliberations that she had training and experience in the law, and the legal definition of intent is different from the common understanding of the term. The foreperson then conveyed to the jurors that the legal definition of intent is akin to negligence.

The trial court denied Johnson's request, concluding the foreperson's statements during deliberations did not constitute misconduct. A different panel of this court conditionally reversed the judgment. We explained, if the information in counsel's declaration were true, the foreperson committed overt misconduct by introducing extraneous and erroneous law into the jury room. We directed the trial court to reconsider whether to disclose the juror information so Johnson may investigate the possible misconduct.

On remand, the trial court provided the jurors notice of Johnson's request, as required under Code of Civil Procedure section 237.[1] Only one of the 12 jurors protested the release of information. The court, however, declined to release information for all the jurors, citing the contentious atmosphere at trial, an outburst by the audience, and incidents recounted in a letter from the protesting juror.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

In this appeal, Johnson argues section 237 required the court to disclose the information for the 11 non-protesting jurors. We reject Johnson's interpretation of section 237. Under a plain and commonsense reading of the statute, a trial court may decline to disclose information for non-protesting jurors if the record reveals a compelling interest against disclosure or the petitioner fails to show good cause.

Nevertheless, we conclude the trial court abused its discretion by finding a compelling interest against disclosure of information for the 11 non-protesting jurors. None of the incidents the court cited involved Johnson, nor does the record reveal a reason to believe a protective order would be insufficient to safeguard the jurors. We also are troubled by the trial court's minimal efforts to ascertain whether the non-protesting jurors consented to the disclosure of their information or desired to talk to the defense. Accordingly, we again conditionally reverse the judgment and order the trial court to reconsider Johnson's petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. ***The crime and trial***

Johnson's son had a child with Maurice Elston's sister. In January 2018, Johnson, Elston, and members of their respective families got into a dispute over the child, which escalated into a physical brawl. At some point during the brawl, Johnson stabbed and killed Elston. Johnson admitted stabbing Elston, but claimed he was acting in self-defense.

The People charged Johnson with murder (Pen. Code, § 187, subd. (a)) and alleged he used a deadly and dangerous weapon during the commission of the offense (Pen. Code, § 12022, subd. (b)(1)). A jury convicted Johnson as charged. The court

3

sentenced him to 25 years to life for the murder plus one year for the weapon enhancement.

## 2.     *Johnson's petition to unseal juror information*

After trial, Johnson petitioned to unseal identifying information for the empaneled jurors.[2]  Johnson argued the information was necessary so he could obtain evidence to use in a motion for new trial.

Johnson attached to the petition a declaration from his counsel that recounted her conversation with the jury foreperson after the trial.  According to counsel's declaration, the foreperson said the jurors were split, nine to three, on whether Johnson intended to kill Elston.  The foreperson "then explained that she had some training and experience in the law, and . . . she advised the three hold-outs that 'intent' had a different meaning under the law than it does in 'real life.'  She said she provided the hold-outs with the following analogy:  if a person leaves their purse in the middle of the room but does not intend to cause someone to trip on it, they may not have intent to cause someone to trip in real life, but under the law they do because they should not have left their purse in the middle of the room. After providing this analogy, the three hold-outs changed their votes to guilty."

Defense counsel said she asked the foreperson for her contact information so an investigator could talk to her.  The prosecutor, who was present during the conversation, objected and said it was not appropriate for an investigator to interview

---

[2]     Although Johnson referred to the request as a "motion," we refer to it as a "petition" to be consistent with the language in section 237.

4

the foreperson.  The foreperson responded that she did not want to get "in the middle of things" and declined to speak further.

The prosecutor opposed Johnson's petition on the ground that he failed to establish a prima facie case of good cause for the release of juror information.  The prosecutor provided her recollection of the conversation with the foreperson.  According to the prosecutor, the "foreperson stated that the issue of intent came up when [the jurors] were deciding between first and second-degree murder. . . .  [T]he foreperson did not tell the defense and the prosecution that there were 3 hold-outs for Not Guilty. . . .  The foreperson did discuss an example being brought forth during deliberations to explain intent but it did not evince any issues of misconduct.  In none of her statements to counsel did it appear that any of the jurors engaged in any misconduct.  It appeared to the People from this brief discussion with the foreperson that all the jurors deliberated thoughtfully."

The court denied Johnson's petition after finding defense counsel's declaration did not show "misconduct that would rise to the level of good cause for disclosing" the jurors' information.  The court noted the foreperson's comments were "something that jurors may do in [the jury room], but it doesn't mean that the rest of [the jurors] followed . . . ."  The court also noted the jurors requested the definitions of intent and murder, they returned their verdict shortly after receiving the court's response, there is no evidence the jurors were confused by the court's instructions, and there is a presumption that the jurors followed those instructions.

After the court denied Johnson's petition, he moved for a new trial based on juror misconduct.  Johnson argued the foreperson committed misconduct when she "drew on her prior

legal training to provide the jurors with an inaccurate definition of intent that likened specific intent to negligence." Johnson alternatively asked the court to reconsider his petition to unseal juror information so he could interview the jurors regarding the extent of the misconduct. The court concluded Johnson failed to show juror misconduct and denied his motion.

**3.** ***Johnson's first appeal***

Johnson appealed the judgment, arguing the trial court erroneously denied his *Batson/Wheeler* motion,[3] the jury foreperson committed misconduct, and the trial court should have granted his petition to disclose juror information.

A different panel of this court rejected Johnson's arguments, except his contention regarding the disclosure of juror information. (See *People v. Johnson* (Mar. 30, 2022, B309104) [nonpub. opn.] (*Johnson I*).) We held defense counsel's declaration established a prima facie showing of good cause for the release of juror information, as required under section 237, subdivision (b). We reasoned that, if the information in the declaration were true, the foreperson committed overt misconduct by introducing extraneous and erroneous law into the jury room. Therefore, it was reasonably likely Johnson could obtain admissible evidence of misconduct if he were to interview the jurors. Because Johnson made a prima facie showing of good cause and the court did not find a compelling interest against disclosure, the court abused its discretion by failing to conduct a hearing under section 237, subdivision (c).

---

[3] *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

We conditionally reversed the judgment and directed the court to "set a hearing in accordance with . . . section 237 to consider whether to disclose juror information. If, after the hearing, the court declines to do so, it shall reimpose the original sentence. If the court instead discloses juror information, it shall provide Johnson a reasonable amount of time to file a motion for new trial. If Johnson does not timely file a motion for new trial, or if the court denies his motion, the court shall reimpose the original sentence." We affirmed the judgment in all other respects. (*Johnson I*.)

4.    ***Proceedings on remand***

On remand, the trial court complied with our directions and set a hearing on Johnson's petition to disclose juror identifying information. At the same time, the court ordered Central Juror Services to notify the former affected jurors of the hearing.

A little over a month later, the court informed the parties that Central Juror Services had sent letters to the jurors. The court stated it did not have copies of the letters sent to the jurors, but it would request a blank form letter from Central Juror Services. The court noted it was "crucial to know whether or not [the jurors] were advised that by not responding [to the letter] it would be taken as there is no objection before the court can rule."

The court stated it had received a letter from one juror protesting the release of that juror's information. The letter recounted incidents during trial that purportedly made the protesting juror and other jurors uncomfortable. The letter also revealed personal circumstances that led the protesting juror to fear being threatened or harassed if the court were to disclose

7

the juror's information.  The court sealed the letter and provided a copy of it to counsel with the juror's name redacted.

The court considered Johnson's petition at a hearing on September 2, 2022.  Defense counsel conceded the protesting juror's letter "satisfies the objection requirements under the code."  Nevertheless, she urged the court to disclose information for the jurors who did not object to disclosure of their information.  Defense counsel offered to draft a protective order "to ensure that information relating to any jurors in this case stays within the custody of counsel and a licensed investigator and nobody else."

The court denied the petition on the ground that there is a compelling interest against disclosure.  The court explained that reading the protesting juror's letter jogged its own memory of the contentious atmosphere at trial and the jurors' concerns for their safety.  The court noted Johnson's family and the victim's family shared a child, which was the cause of the altercation that resulted in the victim's death.  According to the court, "on a daily basis it was contentious to separate the two families," and it had to admonish the audience on several occasions.  The court also noted there was an "outburst" on the victim's side of the audience during the reading of the verdict, which angered Johnson's side.[4]

---

[4]     According to the reporter's transcript of the trial, some audience members were clapping and crying during the reading of the verdict.  The court admonished the audience members to "[p]lease control yourselves."  After the clerk finished reading the verdict, the court remarked that it "underst[oo]d [the audience members'] feelings, but this is not a time to rejoice . . . .  [T]here's nothing happy about today."

According to the court, the contentious atmosphere led the jurors to speak out about not being comfortable walking into the courtroom. The court had to "secure their protection by bringing them into the jury room" during breaks.[5] The jurors also requested they be escorted to their cars after the verdict.[6]

The trial court suggested it also was motivated by a belief that the non-protesting jurors shared the protesting juror's concerns. The court noted the protesting juror's letter described incidents during the trial that made the juror feel unsafe. The court stated it could "infer" the protesting juror was "not the only one that witnessed [those incidents] and felt that way."

The court concluded, "given the totality of how this trial went . . . on a day in and day out basis and how the jury felt, so much that they felt not protected or in danger that they had to be escorted to their cars after the verdict was reached, the court feels that there is [a] compelling interest against disclosure and the court will deny the request to disclose the jurors' identifying information."

---

[5] The trial record shows the court made the accommodation in response to a single juror's request. The juror told the court he repeatedly ran into witnesses and family members outside of the courtroom, despite his efforts to avoid them. The juror said the witnesses and family members did not try to talk to him. Nevertheless, he felt uncomfortable waiting in the hallway.

[6] The trial record shows, immediately before releasing the jury, the court told the jurors, "if you want to be escorted out into the parking [lot], we can do that." The trial record does not reveal which jurors requested the escort or for what reason. Nor does it reveal how many jurors, if any, took advantage of the court's offer.

9

After the court announced its ruling, defense counsel asked if the court believed a protective order would be insufficient to protect the jurors. The court simply responded, "Yes."

## DISCUSSION

### 1. *Relevant law and standard of review*

Section 237 governs the disclosure of "personal juror identifying information" after a criminal trial, including jurors' names, addresses, and telephone numbers. (§ 237, subd. (a)(2); *People v. Munoz* (2019) 31 Cal.App.5th 143, 165.) The original version of the statute—enacted in 1992—allowed trial courts to seal juror information, but only if warranted by a compelling governmental interest. (Stats. 1992, ch. 971, § 3.)

In 1995, the Legislature passed Senate Bill No. 508 (1995–1996 Reg. Sess.) (Senate Bill 508), which amended section 237 to require records of personal juror identifying information be sealed by default upon the recording of a verdict in a criminal case. (Stats. 1995, ch. 964, § 3.) The Legislature stated its intent in amending the statute was "to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors' privacy, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system." (Stats. 1995, ch. 964, § 1.)

As amended, section 237 permits any person to petition for access to sealed juror information by submitting a "declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (§ 237, subd. (b).) If the petition and declaration establish a prima facie showing of good cause, the court shall set the matter for hearing, unless "there is a showing on the record of facts that establish

10

a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm." (*Ibid.*)

If the court sets a hearing on a petition seeking access to juror information, it must provide notice to each affected former juror "by personal service or by first-class mail, addressed to the last known address of the former juror as shown in the records of the court." (§ 237, subd. (c).) "Any affected former juror may appear in person, in writing, by telephone, or by counsel to protest the granting of the petition." (*Ibid.*)

After the hearing on a petition, "the records shall be made available as requested in the petition, unless a former juror's protest to the granting of the petition is sustained. The court shall sustain the protest of the former juror if, in the discretion of the court, the petitioner fails to show good cause, the record establishes the presence of a compelling interest against disclosure as defined in subdivision (b), or the juror is unwilling to be contacted by the petitioner. The court shall set forth reasons and make express findings to support the granting or denying of the petition to disclose." (§ 237, subd. (d).)

We review a trial court's denial of a petition to disclose juror information for an abuse of discretion. (*People v. Johnson* (2013) 222 Cal.App.4th 486, 492.)

2.    ***The trial court was not required to disclose non-protesting jurors' information***

Johnson argues the trial court was statutorily required to disclose the information for the 11 jurors who did not protest the petition. According to Johnson, section 237 allows a juror to protest the release of his or her personal information, but it does not allow a juror to protest the release of any other juror's

11

information.  Therefore, he contends, the statute requires a trial court to disclose information for every juror who does not protest a petition, regardless of whether the record shows a compelling interest against the disclosure.

Resolution of Johnson's argument requires us to interpret section 237.  "When interpreting a statute, a court's role 'is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.]  'We begin as always with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." ' "  (*People v. Cody* (2023) 92 Cal.App.5th 87, 101.)

The court in *People v. Zamora* (2022) 73 Cal.App.5th 1084 (*Zamora*)*,* review den. Mar. 30, 2022, recently interpreted section 237 and rejected an argument nearly identical to the one Johnson makes here.  In that case, the defendant petitioned for the release of juror information, arguing there was good cause because one of the jurors was overheard saying, " '[L]et's just find [the defendant] guilty so we can get this over with.' "  (*Zamora*, at p. 1088.)  The court provided notice of the petition to the affected jurors, six of whom protested disclosure of their information.  (*Id*. at p. 1089.)  At the hearing on the petition, the trial court found the defendant had failed to show good cause for the

12

disclosure of juror information. (*Ibid*.) The court explained the juror's comments appeared to be a joke, other circumstances indicated the jurors took their job seriously, and the evidence of guilt was overwhelming. (*Ibid*.) Based on the lack of good cause, the court refused to disclose information for all the jurors, including those who did not protest the petition. (*Id*. at p. 1091.)

On appeal, the defendant argued the court should have disclosed the information for the six jurors who did not protest the petition. As does Johnson, the defendant asserted section 237 " 'only blocks the release of contact information for those jurors who object to release,' and the plain language of the statute requires the court 'to release the information of those jurors who did not object.' " (*Zamora, supra*, 73 Cal.App.5th at p. 1090.)

The Court of Appeal rejected the defendant's interpretation of section 237, holding instead that a single "juror's protest can support a denial of the petition in its entirety." (*Zamora, supra*, 73 Cal.App.5th at p. 1091.) The court explained that section 237 requires the court to release juror information after a hearing if none of the jurors protests the petition. "However, where one or more jurors protest, the court is required to 'sustain the protest' if the court determines 'the petitioner fails to show good cause, the record establishes the presence of a compelling interest against disclosure as defined in subdivision (b), or the juror is unwilling to be contacted by the petitioner.' (§ 237, subd. (d).)" (*Zamora*, at p. 1091.) The court concluded the trial court complied with this requirement when—"in response to the protests of six jurors" and considering the "wider context of the trial"—it determined the defendant had not shown good cause for the disclosure. (*Ibid*.) The court noted this "is precisely what the statute requires." (*Ibid*.)

13

We agree with the *Zamora* court's interpretation of section 237. Subdivision (d) states, if the court sustains a juror's protest to the granting of a petition, the court may decline to disclose the "records . . . as requested in the petition." (§ 237, subd. (d).) The statute does not specify that those records must concern the juror who protested the petition. Nor does it state that, after sustaining a protest, the court must disclose the records of non-protesting jurors. Accordingly, under a plain and commonsense reading of the statute, if a court sustains a single juror's protest, it may decline to disclose any or all records requested in the petition.

This interpretation is consistent with the broader statutory scheme. (See *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1090 [words of a statute must be read in the context of the provision and statutory scheme as a whole].) The statute contemplates two distinct stages at which a trial court may decline to disclose juror information. At the prima facie stage—described in subdivision (b)—the court may decline to disclose juror information "if there is a showing on the record of facts that establish a compelling interest against disclosure." (§ 237, subd. (b).) Subdivision (b) defines a "compelling interest against disclosure" as "includ[ing], but . . . not limited to, protecting jurors from threats or danger of physical harm." (*Ibid.*) There is no dispute that the court has authority at this stage to deny a petition in its entirety.

The second stage—described in subdivision (d)—takes place after notice to the jurors and a hearing. As at the prima facie stage, the statute grants the court authority to decline to disclose juror information at this stage if "the record establishes the presence of a compelling interest against disclosure as defined in

14

subdivision (b)." (§ 237, subd. (d).) The fact that subdivision (d) expressly incorporates subdivision (b)'s definition of a "compelling interest against disclosure" suggests the Legislature intended the trial court to have the same authority at both stages. That would include the authority to deny a petition in its entirety.

A contrary interpretation of section 237, subdivision (d) would lead to unreasonable results. Under Johnson's proposed interpretation, for example, if a single juror protests a petition and provides credible information showing all the jurors are in imminent danger of physical harm from the petitioner, the court would be powerless to withhold information for the non-protesting jurors. The court would be required to disclose information for jurors who did not protest because they were not aware of the danger, as well as jurors who never received actual notice of the petition. The latter scenario is particularly likely given section 237 allows the court to give notice by mail to a juror's last known address, and there is no time limit to file a petition under section 237. (See § 237, subd. (c).) We are confident the Legislature did not intend to mandate that courts disclose juror information under those circumstances, as it would contravene the Legislature's stated goal of protecting jurors' safety and wellbeing. (See Stats. 1995, ch. 964, § 1; see also *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1087 (*Townsel*) [noting the Legislature intended the current version of section 237 "to *maximize* juror privacy and safety, while retaining a criminal defendant's ability to contact jurors after trial if sufficient need is shown" (italics added)].)

Johnson's interpretation also would contravene California Supreme Court precedent. In *Townsel, supra*, 20 Cal.4th 1084, our state's high court stated the "physical safety of jurors is of

15

paramount concern for the judiciary," and trial courts have the inherent power to protect the safety and privacy of jurors. (*Id.* at pp. 1094–1095, 1097.) That power includes the authority to limit the parties' ability to contact jurors following completion of the trial. (*Id.* at pp. 1095–1096.) The court explained nothing in section 237 "is inconsistent with the existence and exercise of the trial court's inherent power to safeguard juror safety and privacy." (*Townsel*, at pp. 1094–1095.) Under Johnson's interpretation of section 237, however, trial courts would be required to disclose information for all non-protesting jurors, even if the court reasonably believed doing so would put those jurors at risk of physical harm, threats, or harassment. Such an interpretation would limit a trial court's inherent power to protect jurors, contravening the California Supreme Court's statements in *Townsel*.

Johnson contends the Legislature never intended to grant a single juror the power to prevent the release of other jurors' information. He points to a Senate Rules Committee analysis of Senate Bill 508, which notes the amendments to section 237 "provide that a judge may find reason for confidentiality relative to the release of a juror[']s name." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 508 (1995–1996 Reg. Sess.) as amended Sept. 14, 1995.) Johnson also points out that a 1993 amendment to section 237 required notice to "each affected former juror" and permitted "[a]ny affected former juror" to protest the granting of the petition. (Former § 237, subd. (c); Stats. 1993, ch. 632, § 2.) According to Johnson, this shows the Legislature intended that trial courts would separately consider the disclosure of each individual juror's information.

16

We generally agree with Johnson that this was the Legislature's intent. However, we do not agree that the *Zamora* court's interpretation is inconsistent with that intent. Although the interpretation permits a trial court to withhold information for all jurors if it sustains a single's juror protest, it does not require the court to do so. Accordingly, it does not preclude a court from disclosing some jurors' information, while withholding information for others. Nor does it grant a single juror the power to block the release of other jurors' information.

Johnson suggests the *Zamora* court's interpretation is inconsistent with section 206, which states a juror has the "absolute right to discuss or not to discuss the deliberation or verdict with anyone." (§ 206, subd. (a).) As Johnson correctly notes, a court generally may not prevent a petitioner from contacting a juror who affirmatively expresses a desire to talk. (See, e.g., *Townsel, supra*, 20 Cal.4th at p. 1097 ["If a juror does consent to an interview, respondent court would abuse its discretion by requiring counsel to make a showing of need or 'good cause' greater than the desire to interview the juror for a lawful purpose."].) However, the fact that a juror does not protest a petition seeking the disclosure of his or her information does not necessarily mean the juror wants to talk to the petitioner. For example, it is possible that a non-protesting juror did not receive actual notice of the petition, failed to appreciate its significance, or simply did not care enough to respond. Moreover, as Johnson acknowledges, a juror who declines to protest a petition is not obligated to talk to the petitioner.

Nor do we agree with Johnson's suggestion that the *Zamora* court's interpretation gives insufficient weight to the public's and defendants' interest in verdicts untainted by juror

misconduct. As compared to Johnson's proposed interpretation, the *Zamora* court's interpretation more accurately reflects the Legislature's careful balancing of the various rights and interests at stake. It also reflects the fact that trial courts have inherent powers to investigate juror misconduct, which are independent of section 237. Therefore, even if a court finds a compelling interest against disclosure under section 237, the court has other means to ensure the verdict is untainted by juror misconduct. (See *People v. Tuggles* (2009) 179 Cal.App.4th 339, 387 (*Tuggles*) [section 237 does "not infringe upon the trial courts' inherent power to investigate strong indicia of juror misconduct"].)

Johnson argues his interpretation finds support in the fact that, after a hearing on a petition, the court must disclose all the requested juror information unless it sustains a juror's protest to the petition. We acknowledge this aspect of the statute is somewhat inconsistent with the *Zamora* court's interpretation. If the Legislature had intended to grant the court authority to withhold all jurors' information after the hearing, it is not clear why it would have conditioned that authority on the receipt of a protest from at least one juror. Nevertheless, as compared to Johnson's interpretation, the *Zamora* court's interpretation is far more consistent with the plain language of the statute, the broader statutory scheme, a trial court's inherent powers, and California Supreme Court precedent. Accordingly, this relatively minor inconsistency does not persuade us to reject it.

3. ***The trial court abused its discretion by refusing to disclose non-protesting jurors' information***

Although we reject Johnson's interpretation of section 237, we agree with him that the trial court abused its discretion by

18

finding a compelling interest against disclosure of the non-protesting jurors' information.[7]

The trial court did not identify the specific compelling interest against disclosure that justified its refusal to disclose information for the non-protesting jurors. However, from its remarks at the hearing, it seems the court believed disclosing the non-protesting jurors' information would expose those jurors to a risk of physical harm, threats, or harassment. (See § 237, subd. (b) [a "compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm"].) In support of its decision, the court cited the contentious atmosphere at trial and an "outburst" during the reading of the verdict. The court also noted the non-protesting jurors likely witnessed the incidents described in the protesting juror's letter. From this, the court seemed to infer that the non-protesting

---

[7] The Attorney General contends Johnson forfeited this issue by failing to raise it in his opening brief on appeal. Generally, " '[o]bvious reasons of fairness militate against consideration of an issue raised initially in the reply brief.' " (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.) Here, however, the Attorney General addressed the issue on the merits in his respondent's brief, which mitigates any fairness concerns. Moreover, consideration of the issue will forestall an inevitable claim of ineffective assistance of counsel. Accordingly, to the extent Johnson forfeited the issue, we exercise our discretion to overlook the forfeiture and consider the issue on the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party."]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [court considered an otherwise forfeited claim to forestall an ineffective assistant of counsel claim].)

jurors shared the protesting juror's concerns about the release of their information.

Although the contentious atmosphere, outburst, and incidents described by the protesting juror may have demonstrated a risk to the jurors during the trial, they do not justify the court's wholesale denial of Johnson's request for information. The incidents giving rise to the court's concerns exclusively involved witnesses and members of the audience at trial.[8] However, Johnson did not seek to make the jurors' information public or otherwise accessible to third parties. Rather, he sought disclosure only for the limited purpose of contacting the jurors to investigate potential juror misconduct. The court did not find there was a risk that Johnson would share the jurors' information with persons responsible for the incidents at trial, nor does the record suggest any reason to suspect he would do so. Although it seems some of the incidents involved members of Johnson's family, there is nothing indicating Johnson directed, encouraged, or even approved of their behavior during the trial.

Even if the court had reason to suspect Johnson might personally use the jurors' information for an improper purpose, the court had other means to ensure the jurors' safety and wellbeing. Section 237 grants a trial court authority to "limit disclosure [of juror information] in any manner it deems appropriate," including requiring "the person to whom disclosure is made, or his or her agent or employee, to agree not to divulge

---

[8] Although the protesting juror's letter refers to incidents involving "[t]he parties," it is clear from context and the surrounding circumstances that the juror was not referring to Johnson.

20

jurors' identities or identifying information to others . . . ."
(§ 237, subd. (d).)  Defense counsel offered to draft a protective
order limiting the disclosure of information to defense counsel
and her investigator.  The court rejected counsel's proposal,
but it did not explain why.  If the court had reason not to trust
defense counsel or her investigator to keep the jurors' information
confidential and use it for a proper purpose, the court should
have stated so on the record.  (See § 237, subd. (d) ["The court
shall set forth reasons and make express findings to support
the granting or denying of the petition to disclose."].)

 Nor was it reasonable for the court to infer that all the
jurors shared the protesting juror's concerns.  The protesting
juror's letter provided legitimate reasons to object to the
disclosure of that juror's information.  However, the incidents
the juror described were not of such a nature that other jurors
who witnessed them necessarily would have objected to the
release of their information.  The simple fact that not a single
other juror protested Johnson's petition—despite presumably
witnessing the same incidents as the protesting juror—is a
strong indication that not all the jurors shared the protesting
juror's concerns.

 The trial court's inference is further undermined by the
fact that the foreperson spoke to defense counsel after the trial
and seemed willing—at least initially—to provide her contact
information to the defense.  According to defense counsel, the
foreperson declined to provide her information only after the
prosecutor said it would be inappropriate to do so.  As we stated
in *Johnson I*, "[t]here is nothing inherently improper about a
juror talking to a defense investigator, and the prosecutor should
not have made that remark.  There is a reasonable possibility

21

the foreperson would change her mind if properly instructed by the court." (*Johnson I.*)  The court presumably provided that instruction by way of the notice of Johnson's petition,[9] and it appears the foreperson did not protest in response.  This suggests the foreperson had, in fact, changed her mind and is willing to share her information with Johnson.

We also are troubled by the trial court's apparent failure to consider the content of the letters that Central Juror Services sent to the jurors.  The court noted it was "crucial" to review the letters before ruling on the petition.  As the trial court seemed to recognize, it is possible the letters told the jurors that failure to protest the petition would be construed as consent to the disclosure of their information.  If so, it is possible some of the jurors failed to respond because they were willing to have Johnson contact them to talk about the case.

Despite the significance of the letters, the trial court did not mention them at the hearing on Johnson's petition.  Nor do they appear in the trial court's case file or the record on appeal.[10] Given their complete absence in the record of the hearing, it is reasonable to infer the trial court did not consider the letters before ruling on Johnson's petition.[11]  The court's failure to do so

---

[9]     As we discuss below, the record does not include the letters Central Juror Services sent to the jurors providing notice of Johnson's petition.  Therefore, we do not know what those letters conveyed.

[10]     We asked the parties to augment the record with the letters.  Neither party was able to do so, and Johnson informed us that the letters are not in the trial court's case file.

[11]     We requested supplemental briefing from the parties on whether the trial court considered the Central Juror Services

undermines the reliability of its inference that the non-protesting jurors shared the protesting juror's concerns. It also raises the possibility that the court refused to release information for jurors who were willing to talk to Johnson about the case. If so, the court may have frustrated those jurors' "absolute right to discuss . . . the deliberation[s] or verdict with anyone." (§ 206, subd. (a).)

We acknowledge the court may have been concerned that some jurors did not receive actual notice of the petition or failed to understand its significance. If so, regardless of the content of the letters from Central Juror Services, those jurors' failure to protest would not reflect their consent to the release of their information or a willingness to talk about the case. Nevertheless, to the extent the court had any doubts about the non-protesting jurors' intentions, it should have made more of an effort to contact them. The court sent jurors a single letter providing notice of Johnson's petition, without any follow-up with the

letters before ruling on Johnson's petition. Although the parties agree there is nothing in the record indicating the trial court considered the letters, the Attorney General urges us to presume that it did so. The Attorney General points out that, in " 'the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court "ignored" that evidence.' " (Quoting *People v. Jones* (2002) 86 Cal.App.5th 1076, 1092.) Moreover, a reviewing court generally presumes the trial court considered the evidence presented to it. (*Ibid*.) Here, however, there is nothing in the record indicating the letters were before the court when it considered Johnson's petition. Indeed, the letters do not appear anywhere in the record of the hearing, including in the court's case file. Because there is no indication that the court ever possessed the letters, we decline to presume the court considered them before ruling on Johnson's petition.

11 jurors who failed to respond. Given the significant rights at stake—including Johnson's right to an unbiased jury and the jurors' absolute right to discuss the deliberations and verdict—at the very least, the court should have sent the jurors a second letter or tried to contact them by telephone. (See, e.g., *Tuggles, supra,* 179 Cal.App.4th at pp. 353, 377 [court sent jurors a second letter to clarify their options with respect to a petition for the disclosure of their information]; *People v. Russell* (2017) 9 Cal.App.5th 1050, 1056, 1058 [court clerk repeatedly called and left messages for non-responsive jurors].)

We also remind the trial court that, even if there are legitimate reasons not to disclose juror information, the "duty to protect jurors from overzealous attorneys and investigators does not require an abdication of the court's obligation to ensure that the jury trial process is free from misconduct." (*Tuggles, supra,* 179 Cal.App.4th at p. 387.) Nor does it preclude the court from exploring other options that would give Johnson access to vital information while ensuring the jurors' safety and confidentiality.[12] For example, the court could act as an intermediary between the jurors and the defense by requiring all communications take place through the court clerk. (See, e.g., *People v. Cox* (1991) 53 Cal.3d 618, 700, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [approving order that required all communication between defense investigators and jurors to go through the clerk].)

---

[12] We acknowledge our statements in *Johnson I* may have implied the trial court lacked authority to conduct proceedings beyond those specifically listed in the disposition. Therefore, we do not fault the court or the parties for declining to pursue other avenues to investigate the alleged juror misconduct.

24

The court also could provide access to a shared telephone line, video conferencing service, or meeting room.  Or, if necessary, the court could order the jurors to appear and testify at a hearing.  (See *People v. Dykes* (2009) 46 Cal.4th 731, 809 [a trial court "has discretion to determine whether to conduct an evidentiary hearing to resolve factual disputes raised by a claim of juror misconduct"]; *Tuggles*, at p. 387 [trial court had authority to order jurors to attend an evidentiary hearing, even if those jurors declined to discuss the case with counsel].)  We appreciate that this would inconvenience the jurors and the court.  However, in the face of such serious allegations of juror misconduct, the inconvenience may be necessary to ensure Johnson received a fair trial.

## DISPOSITION

We conditionally reverse the judgment and remand the case for the trial court to reconsider Johnson's petition in accordance with this opinion.  The court need not reconsider the petition with respect to the protesting juror.  On remand, the court shall provide the 11 non-protesting jurors new notice under section 237, subdivision (c).  If, after providing notice, the court remains uncertain whether any jurors are unwilling to be contacted by Johnson, the court must make reasonable efforts to contact those jurors to ascertain their wishes.  The court also may take other measures to investigate the alleged juror misconduct on its own or to facilitate Johnson in his investigation.  The court shall provide Johnson a reasonable

amount of time to file a motion for new trial.  If Johnson does not timely file a motion for new trial, or if the court denies his motion, the court shall reimpose the original sentence.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


ADAMS, J.